UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RANDY SKAINS,
    Plaintiff,

v.

YIP LEE, et al.,
    Defendants.

Case No. 12-cv-00087-WHO (PR)

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Dkt. No. 58

## INTRODUCTION

Plaintiff Randy Skains seeks relief under 42 U.S.C. § 1983 on his claims that the medical staff at Salinas Valley State Prison were deliberately indifferent to his serious medical needs by delaying and denying medical treatment for his prostate cancer, carpal tunnel syndrome, and trigger finger. Defendants move for summary judgment, have presented supporting evidence, and have provided Skains with the required warnings under *Rand v. Rowland*, 154 F.3d 952, 962-63 (9th Cir. 1998) (en banc). Skains did not file an opposition. Because there are no material facts in dispute, defendants' motion for summary judgment is GRANTED.

## STANDARD OF REVIEW

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those

which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. On an issue for which the opposing party by contrast will have the burden of proof at trial, as is the case here, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(c). The Court is concerned only with disputes over material facts and "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. It is not the task of the court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment. *Id.* If the nonmoving party fails to make this showing, "the moving party is entitled to a judgment as a matter of law." *Celotex*, 477 U.S. at 323 (internal quotations omitted).

## FACTUAL BACKGROUND

Skains alleges that Drs. Richard Mack, S. Abdou, Magdy Danial, Eric Bridgnell, and Michael Sepulveda and nurses Debra Tyler and Diane Olsen violated his Eighth Amendment rights by delaying or denying his medical care and treatment over a period of several years. Skains contends that by delaying or denying care for his prostate cancer, and his carpal tunnel and trigger finger, defendants were deliberately indifferent to his serious medical needs.

**A.      Prostate Cancer**

In 2007, before arriving at Salinas Valley State Prison, Skains was administered a Prostate Specific Antigen ("PSA") test which showed that he had a level of 7.44. (Defs'. Mot. for Summ. J. ("MSJ") at 3, Ganahl Decl., Ex. B at 1.) A PSA level of over 4.0 indicates the possible presence of prostate cancer, but it can also indicate that a patient has a benign growth, an infection, or an inflammation.[1] (MSJ at 3-4, Mack Decl. ¶ 4.)

Skains arrived at Salinas Valley in January 2008. (MSJ at 4.) That February, Skains received another PSA test, which resulted in a level of 6.61. (*Id.*, Ganahl Decl., Ex. C at 5, 8; Mack Decl. ¶ 4.) In February 2009, his level was 6.51. (*Id.*, Ganahl Decl., Ex. D at 3, 10.) However, an ultrasound conducted in April 2009 showed that his prostate was of normal size and there was no obvious mass present. (MSJ, Ganahl Decl., Ex. D at 22; Mack Decl. ¶ 5.)

In June 2009, his PSA was 6.8. (MSJ, Ganahl Decl., Ex. D at 22.) In September, a cystoscopy and a biopsy were performed. (*Id.*, Ganahl Decl., Ex. D at 48, 51; Mack Decl. ¶ 6.) The biopsy results, received on October 7, 2009, indicated that samples of tissues from Skains's prostate contained cancer cells. (*Id.*, Ganahl Decl., Ex. D at 55-58; Mack Decl. ¶ 5.) According to defendants, this was the first definitive indication received by CDCR medical staff that Skains had prostate cancer.[2] (MSJ at 5, Mack Decl. ¶ 6.) In November 2009, Skains was referred to a urologist, and in January 2010, he was referred to radiation oncology. (*Id.*, Ganahl Decl., Ex. D at 63; Ex. E at 5.)

---

[1] Skains's laboratory reports echo this in boilerplate language: "Do not interpret levels of PSA as absolute evidence of the presence or absence of malignant disease. Measurements of PSA should always be used in conjunction with other diagnostic procedures, including information from the patient's clinical evaluation." (MSJ, Ganahl Decl., Ex. D at 10.)

[2] Plaintiff alleges in his second amended complaint that defendants knew before April 2009 that he had cancer. (SAC at 6.) He asserts that on May 1, 2008, a urologist, Dan Milanesa, expressed his belief that Skains had cancer, and recommended that he receive a biopsy and a cystoscopy. (*Id.*) The next day Skains informed Mack about Malinesa's recommendations, but Mack did not order any of the tests, though nurse Tyler ordered tests after Skains filed a grievance. (*Id.*) However, these allegations are not supported by any evidence, Skains not having filed any response to the motion for summary judgment. Also, the results of the April 2009 ultrasound eliminate the significance of Malenesa's alleged statement.

In February 2010, Skains was seen by an oncologist, and received a CT scan to determine if his prostate cancer had grown into other organs or structures in the pelvis or other areas of the body.  (*Id*., Ganahl Decl., Ex. D at 10.)  (Although defendants do not directly make this point, it appears that the cancer had not spread.)  In May, he received gold markers,[3] and on June 16, he began radiation therapy.  (*Id*., Ganahl Decl., Ex. E at 18, 30, 34; Mack Decl. ¶ 7.)

Skains received radiation therapy nearly every day from June 16 to September 2, 2010.  (*Id*., Ganahl Decl. Ex. E at 34-91.)  Skains's radiation treatment did pause from July 2, 2010 through July 20, 2010 because the radiation equipment did not work.  (*Id*. at 51-55.)  Skains received all of the prescribed radiation treatments despite the treatment gap.  (MSJ, Mack Decl. ¶ 8; Olson Decl. ¶ 5.)

In January 2011, Skains's PSA was less than 0.1.[4]  (*Id*., Ganahl Decl. Ex. F at 2.)  After January 2011, CDCR medical staff has tested Skains's PSA level every four to six months.  (*Id*., Mack Decl., ¶ 10; Ganahl Decl. Ex. F at 16, 36; Ex. G at 7, 16, 21, 27; Ex. H at 10; Ex. J at 5, 32; Ex. K at 51.)  In May 2012, Skains's PSA test resulted in a 0.4, and in response, Mack requested that Skains receive a urology exam.  (*Id*. at 6, Ganahl Decl., Ex. G at 10; Mack Decl. ¶ 10.)  The urologist's notes from that August 2, 2012 meeting reflect that his PSA remained at very low levels and did not indicate evidence of cancer.  (*Id*., Ganahl Decl., Ex. G at 25; Mack Decl. ¶ 10.)  In October 2014, Skains's PSA level was 0.2.  (*Id*., Ganahl Decl., Ex. K at 51.)

---

[3] Gold markers are tiny rods placed in the prostate to provide "tumor alignment" during radiation.  (MSJ, Ganahl Decl., Ex. E at18; Mack Decl. ¶ 7.)

[4] According to defendants, a low PSA level following radiation treatment indicates that the radiation treatment was highly successful in reducing or eliminating prostate cancer.  (MSJ at 5-6; Mack Decl. ¶ 9.)

4

**B. Carpal Tunnel Syndrome and Trigger Finger**

In December 2008, a nerve study of Skains indicated mild to moderate carpal tunnel in his right wrist, though not all his physicians would agree with this diagnosis.[5] (MSJ at 7, Ganahl Decl., Ex. C at 18-19.) In February 2009, his right elbow and shoulder were radiologically examined and determined to be normal. (*Id*., Ganahl Decl., Ex. D at 5-7.) In March 2010, doctors noticed his trigger finger,[6] which was ultimately found to be functional. He could perform all activities of daily living and his symptoms were well controlled by conservative treatments. (MSJ, Ganahl Decl., Ex. H at 4; Ex. T at 8.) From 2009 to 2014, Salinas Valley physicians considered surgery as treatment for both conditions, but ultimately rejected it as not warranted. They recommended conservative treatments as steroid injections, exercises and stretches. (*Id*., Ganahl Decl., Ex. F at 13, 22-24; Ex. G at 2; Ex. H at 4; Ex. O at 20, 22; Ex. Q at 3-5; Ex. R at 1; Ex. T at 8; Sepulveda Decl. ¶ 7; Mack Decl. ¶¶ 7-9, 21; Bridgnell Decl. ¶ 7.)

After his transfer to prisons outside the Northern District, Skains eventually received surgery for his conditions, though his doctors there also at first recommended conservative treatments. (*Id.*, Ganahl Decl., Ex. J at 12, 14-15, 19; Ex. K at 34-35.)

## DISCUSSION

Defendants move for summary judgment on grounds that they provided ample and appropriate treatment for Skains's medical needs. The motion is unopposed.[7] A district court may not grant a motion for summary judgment solely because the opposing party has

---

[5] Carpal tunnel syndrome occurs when the median nerve, which runs from the forearm into the palm of the hand, becomes pressed or squeezed at the wrist. (MSJ at 6, Mack Decl. ¶ 14.) Various drugs can ease the pain and swelling associated with carpal tunnel, as can stretching and strengthening of the wrist. (*Id*.) Surgery may be recommended. *Id*.)

[6] Trigger finger is a condition that occurs when the tendons become inflamed, causing the fingers or thumb to catch or lock when bent. (MSJ at 6, Mack Decl. ¶ 15.) It may be treated by resting the finger, or applying a splint to keep the joint from moving, or performing exercises. (*Id*.) If symptoms continue, anti-inflammatory drugs such as ibuprofen may treat this condition and surgery may be recommended. (*Id*.)

[7] At Skains's request, I twice extended the time for him to respond to defendants' motion, ultimately giving him more than five months to do so. Dkt. Nos. 69, 71.

failed to file an opposition. *See Cristobal v. Siegel*, 26 F.3d 1488, 1494-95 & n.4 (9th Cir. 1994) (unopposed motion may be granted only after court determines that there are no material issues of fact). This is so even if the failure to oppose violates a local rule. *See Martinez v. Stanford*, 323 F.3d 1178, 1182-83 (9th Cir. 2003). The Court may, however, grant an unopposed motion for summary judgment if the movant's papers are themselves sufficient to support the motion and do not on their face reveal a genuine issue of material fact. *See United States v. Real Property at Incline Village*, 47 F.3d 1511, 1520 (9th Cir. 1995) (local rule cannot mandate automatic entry of judgment for moving party without consideration of whether motion and supporting papers satisfy Fed. R. Civ. P. 56), rev'd on other grounds sub nom. *Degen v. United States*, 517 U.S. 820 (1996); *Henry v. Gill Industries, Inc.*, 983 F.2d 943, 950 (9th Cir. 1993) (same).

A prison official is deliberately indifferent, and thereby violates the Eighth Amendment, if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but "must also draw the inference." *Id*. Consequently, in order for deliberate indifference to be established, there must exist both a purposeful act or failure to act on the part of the defendant and harm resulting therefrom. *See McGuckin*, 974 F.2d at 1060. FULL CITE.

A difference of opinion between a prisoner patient and a medical doctor is not enough to make out a violation of the Eighth Amendment. *Toguchi v. Chung*, 391 F.3d 1051, 1058-60 (9th Cir. 2004). Rather, a plaintiff must establish that the course of treatment the doctors chose was "medically unacceptable under the circumstances" and that they embarked on this course in "conscious disregard of an excessive risk to [plaintiff's] health." *Id.* at 1058 (citation omitted). Neither negligence, gross negligence, nor the inadvertent failure to provide medical care is sufficient to make out a violation of the Eighth Amendment. *Id.*; *Farmer v. Brennan*, 511 U.S. 825, 835-36 & n.4 (1994); *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981).

The evidence presented by defendants supports their motion for summary judgment. Defendants did not have definite proof that Skains had prostate cancer until October 2009, when the results of Skains's cystoscopy and biopsy were returned. While Skains did display a high PSA level from 2007-2009, it could be interpreted as being caused by a benign growth, infection, or inflammation. Also, a trans-abdominal/perianal ultrasound of Skains's prostate in April 2009 revealed that Skains had no obvious mass present on his prostate.

Further, a delay in treatment is not sufficient to show an Eighth Amendment violation. The delay itself must have led to further injury or harm. *Shapley v. Nevada Bd. of State Prison Comm'rs*, 776 F.2d 404, 407 (9th Cir. 1985). Here, despite the delays in Skains's diagnosis and treatment, he has not presented any evidence, as opposed to speculation, that he suffered any further injury or harm. As of October 2014, his PSA level was 0.2. A PSA of this level indicates that Skains's treatment was successful in either reducing or eliminating his cancer. At its worst, the medical staff's failure to diagnose and treat Skains's prostate cancer sooner constituted negligence or gross negligence, neither of which is actionable under section 1983. *Farmer*, 511 U.S. 825, 835–36 & n.4 (1994).

Defendants' motion for summary judgment on Skains's claims regarding his cancer treatment is GRANTED.

Summary judgment will also be GRANTED as to Skains's claims regarding his carpal tunnel and trigger finger treatment. Defendants denied Skains's surgery for both because there were less invasive therapeutic options still available to help alleviate Skains's ailments. Moreover, from 2009-2014 there was a difference of opinion among Skains's doctors about whether he actually suffered from carpal tunnel and trigger finger.

Despite Skains's argument, defendants' decisions to pursue options other than surgery are not sufficient to show a genuine dispute that defendants' decisions were "medically unacceptable under the circumstances" and that they embarked on this course

7

1 in "conscious disregard of an excessive risk" to his health. *Toguchi*, 391 F.3d at 1058-60.

2 As stated above, "a showing of nothing more than a difference of medical opinion as to the

3 need to pursue one course of treatment over another is insufficient, as a matter of law, to

4 establish deliberate indifference." *Id.* 391 F.3d at 1059-60.

5  In sum, defendants' papers are sufficient to support the motion and do not on their

6 face reveal a genuine issue of material fact. The evidence shows that defendants provided

7 constitutionally adequate medical care.

## CONCLUSION

9  Defendants' motion for summary judgment (Docket No. 58) is GRANTED. The

10 Clerk shall terminate Docket No. 58, enter judgment in favor of Drs. Richard Mack,

11 S. Abdou, Magdy Danial, Eric Bridgnell, and Michael Sepulveda and nurses Debra Tyler

12 and Diane Olsen as to all claims, and close the file.

13 **IT IS SO ORDERED.**

14 **Dated:** August 24, 2015



WILLIAM H. ORRICK
United States District Judge